UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANDREW L. MEEKS, II, | Case No. 3:12-cv-00322-MMD-WGC |
| Plaintiff, | BENCH ORDER |
| v. | |
| CHERYL BURSON, BENJAMIN KYKER, JAMES COBURN, CONNER WOLF, SEAN BLOOMFIELD, CHRISTOPHER TRAUTMAN, GUSTAVO SANCHEZ, TIMOTHY CHRISTIANSON, FRANK DREESEN, BRIAN WILLIAMS, and DAVID SINGER, | |
| Defendants. | |

I.      **SUMMARY**

Plaintiff Andrew L. Meeks, II, is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Proceeding pro se, Plaintiff filed this action against correctional officers and other staff of the Southern Desert Correctional Center ("SDCC"), where the events giving rise to this action occurred. (Dkt. no. 4.) Plaintiff alleges that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments by using excessive force, and retaliating and conspiring against him throughout September and October 2011. (Dkt. no. 4 at 6-22.)

In its Screening Order, the Court determined that Plaintiff stated colorable claims in each of 5 counts he alleges. (Dkt. no. 3 at 3-10.) In Count I, Plaintiff alleges that

Defendants Wolf, Coburn, Singer, Bloomfield, Trautman, and Sanchez attacked him on September 25, 2011 ("September Incident"). (Dkt. no. 3 at 3; dkt. no. 4 at 6-9.) In alleging this attack, Plaintiff states colorable claims for excessive force, retaliation, and racial discrimination in violation of his Eighth, First, and Fourteenth Amendment rights, respectively. (Dkt. no. 3 at 4-5.) Defendants contend that Plaintiff failed to exhaust his administrative remedies for his First Amendment retaliation claim against Coburn and Bloomfield. (Dkt. no. 111 at 2-3.)

In Count II, Plaintiff alleges that Defendants Burson, Coburn, and Kyker failed to process grievances he filed after the September Incident in an attempt to cover up the attack. (Dkt. no. 4 at 10-13.) Plaintiff states colorable claims for violations of his First Amendment right to redress and his Fourteenth Amendment right to due process. (Dkt. no. 3 at 6.) Defendants argue that Plaintiff did not exhaust his administrative remedies for his First and Fourteenth Amendment claims against Coburn and Kyker. (Dkt. no. 111 at 4-5; dkt. no. 118 at 7-10.)

In Count III, Plaintiff alleges that Defendants Christianson and Coburn conspired to incite inmates and prison officers to assault Plaintiff because of his criminal convictions. (Dkt. no. 4 at 14-16.) Plaintiff's claim that Christianson and Coburn conspired to use excessive force in violation of the Eighth Amendment is colorable. (Dkt. no. 3 at 8.) Defendants argue that Plaintiff did not exhaust his administrative remedies for his claim of conspiracy to use excessive force. (Dkt. no. 111 at 5-6.)

In Count IV, Plaintiff alleges that before the September Incident, he was warned that his practice of filing grievances put him on several prison officers' "radar." (Dkt. no. 4 at 17.) After Plaintiff filed a grievance based on this exchange, Bloomfield allegedly searched his cell and other cells in his wing to retaliate against his use of the grievance process. (*Id.* at 17-19.) Plaintiff states a colorable claim that Bloomfield violated his First Amendment rights by retaliating against him. (Dkt. no. 3 at 8-9.) Defendants contend that Plaintiff never exhausted his administrative remedies for this claim. (Dkt. no. 111 at 6-7.) ///

Finally, in Count V, Plaintiff states a colorable claim that Defendants Burson, Dreesen, and Williams failed to prevent the September Incident, and, under a theory of supervisory liability, are liable for their subordinates' actions during the September Incident. (Dkt. no. 3 at 9-10.) Defendants concede that SDCC's administrative remedies were effectively unavailable to Plaintiff for this claim. (Dkt. no. 118 at 17-18.)

The Court held a bench trial on July 29, 2014, regarding Plaintiff's exhaustion of his administrative remedies. Testimony at trial concerned SDCC's grievance process and the contested grievances. Defendants' only witness was Defendant Dreesen, and Plaintiff served as his own sole witness. The Court finds that Plaintiff alleges sufficient facts to exhaust his administrative remedies for claims in Counts I, II, and III, and that SDCC's administrative remedies were effectively unavailable to Plaintiff for claims in Counts II, III, IV, and V. Plaintiff may proceed with the contested colorable claims in each count.

The Court has also considered Defendants' Motion to Strike Plaintiff's Objections (dkt. no. 122) ("Motion"). Because the Court overrules Plaintiff's objections, the Motion is denied.

## II.   FINDINGS OF FACT

SDCC uses a 3-level grievance system to process and respond to certain inmate complaints, including civil rights grievances. (Defs.' Exh. 520 at 2, 4-7; Dreesen Test.) SDCC requires an inmate to file an Informal-Level Grievance, followed by a First-Level Grievance, followed by a Second-Level Grievance. (Defs.' Exh. 520 at 4-7.)

SDCC staff and inmates refer to NDOC's Administrative Regulation 740 ("AR 740") for rules governing this process. (Defs.' Exh. 520; Dreesen Test.) Procedures to implement those rules appear in SDCC's Operational Procedure #740 ("OP 740"). (Defs.' Exh. 521; Dreesen Test.) At SDCC, the Grievance Coordinator is responsible for processing inmate grievances; Dreesen, SDCC's Associate Warden of Programs, currently plays this role. (Dreesen Test.) Between October 2010 and October 2012, Dreesen was SDCC's Warden of Operations. (*Id.*) Defendant Burson served as

1  Grievance Coordinator between at least September 2011 and February 2012. (*See*
2  Defs.' Exhs. 502, 508; Meeks Test.)

3      Under AR 740, inmates filing civil rights grievances and seeking monetary
4  remedies must file Form DOC-3095, the Administrative Claim Form ("ACF"), alongside
5  their grievances. AR 740.05(7)(B); (Defs.' Exh. 520 at 5). The ACF, which applies only
6  where inmates seek "monetary restitution or damages," (Defs.' Exh. 520 at 5), asks
7  inmates to sign a release stating "this is my entire claim against the State of
8  Nevada/Department of Corrections." (Defs.' Exh. 502 at 6.)

9      Prison staff members use Form DOC-3098, the Improper Grievance
10  Memorandum ("Form 3098"), to notify inmates of certain defects in their grievances.
11  (Defs.' Exh. 520 at 5-6, 9.) Form 3098 states, "You may re-submit your grievance after
12  correcting the above deficiencies. Failure to re-submit the grievance through the
13  prescribed timeframe shall constitute abandonment." (Defs.' Exh. 502 at 9.)

14      Grievances may be denied on the merits, or rejected for procedural deficiencies.
15  (Dreesen Test.)

16      **A.    Count I**

17          **1.    Use of Excessive Force and Equal Protection**

18      The parties stipulate that Plaintiff properly exhausted his administrative remedies
19  for his Count I excessive force and equal protection claims by filing and appealing
20  Grievance 2006-29-31314 ("Exhibit 504")[1] through each level of SDCC's process. (Defs.'
21  Exh. 504; dkt. no. 118 at 11-12.)

22          **2.    Retaliation**

23              **a.    Grievance 2006-29-31314 ("Exhibit 504")**

24      On September 29, 2011, Plaintiff filed Informal-Level Grievance 2006-29-31314,
25  claiming that five correctional officers assaulted him during the September Incident, and
26  identifying Defendants Singer, Christianson, and Bloomfield. (Defs.' Exh. 504 at 1-5.)

27  ───────────────

28      [1]The Court refers to Plaintiff's grievances by Defendants' exhibit number.

4

Plaintiff wrote that after searching his cell, the five officers handcuffed him, removed him from his cell, and proceeded to beat him while shouting racial epithets and making derogatory comments about his criminal convictions. (*Id.* at 2-4.) Plaintiff specified that during the attack, an officer pulled his arms away from his back to injure his wrists. (*Id.* at 3.) Plaintiff noted that one officer called him a "'cry baby who likes putting paperwork on officers,'" that another officer threatened to tell other inmates about Plaintiff's convictions, and that Christianson distributed handouts about his criminal convictions. (*Id.* at 4-5.)

Plaintiff filed an ACF with his Informal-Level Grievance. (*Id.* at 6-8.) Although he completed the first two pages of the form, he did not sign the last page. He instead wrote "I do not agree with the language of this statement and thus I wont [sic] sign it." (*Id.* at 8.)

On October 3, 2011, Burson rejected the Informal-Level Grievance because Plaintiff was "pending a notice of charges for [the] incident." (*Id.* at 1.) On October 10, 2011, Burson issued a Form 3098 noting the same defect. (*Id.* at 9.)

Objecting to this procedural rejection, Plaintiff filed a First-Level Grievance on October 18, 2011, which Burson rejected three days later because Plaintiff's Informal-Level Grievance was not accepted. On October 24, 2011, Burson issued a Form 3098 specifying the same basis for rejection. (*Id.* at 10-13.)

On October 26, 2011, Plaintiff filed a Second-Level Grievance objecting to Burson's rejection of his earlier two grievances. (*Id.* at 14.) Burson rejected the Second-Level Grievance on November 2, 2011, because the "allegation was submitted for investigation." (*Id.*) On November 4, 2011, Burson issued a Form 3098 listing the same reason for rejection. (*Id.* at 15.)

### b.    Grievance 2006-29-34579 ("Exhibit 517")

On November 16, 2011, Plaintiff filed Informal-Level Grievance 2006-29-34579, writing that Coburn failed to process an Emergency Grievance he had filed about the September Incident. (Defs.' Exh. 517 at 1-2.) Plaintiff also filed an ACF. (*Id.* at 3-5.) Tanya Hill, a caseworker, rejected the grievance on December 8, 2011. (*Id.* at 5; Dreesen Test.) The next day, Burson issued a Form 3098 specifying that Plaintiff did not

sign the ACF, which "ma[de] [Plaintiff's] submission incomplete and improper" and "constitute[d] abandonment of the grievance at [the informal] and all subsequent levels." (Defs.' Exh. 517 at 6.)

Plaintiff filed a First-Level Grievance on December 14, 2011, objecting to the ACF's signature requirement. (*Id.* at 7.) The same day, Plaintiff signed the ACF under a handwritten note stating that he "do[es] not agree that this is [his] entire claim." (*Id.* at 5.) On January 4, 2012, Hill rejected the First-Level Grievance and Burson issued a Form 3098 that quoted AR 740 and the ACF, and concluded that "any grievance that does not have the inmate's signature on the [ACF] will not be accepted." (*Id.* at 8.)

Plaintiff filed a Second-Level Grievance the next day. (*Id.* at 9.) Burson rejected it on January 11, 2012, because Plaintiff's lower-level grievances were rejected. (*Id.*)

### c. Grievance 2006-29-30103 ("Exhibit 503") and Grievance 2006-29-31428 ("Exhibit 506")

On September 8, 2011, Plaintiff filed Informal-Level Grievance 2006-29-30103, writing that Correctional Officer Mikel had warned Plaintiff that he was "on someone's radar," and that he needed to "chill out." (Defs.' Exh. 503 at 4-5.) Burson rejected this grievance on September 13, 2011, because Plaintiff failed to specify a remedy; she filed a Form 3098 stating the same procedural defect on September 20, 2011. (*Id.* at 3-4.)

Plaintiff specified a remedy and resubmitted his grievance on October 6, 2011, through Informal-Level Grievance 2006-29-31428. (Defs.' Exh. 506 at 2.) Burson rejected the resubmitted grievance the same day, noting that Plaintiff "cannot grieve something that has not or 'might' happen." (*Id.*) She issued a Form 3098 stating the same reason on October 19, 2011. (*Id.* at 1.)

Plaintiff filed a First-Level Grievance on October 21, 2011, objecting to the denial of his resubmitted Informal-Level Grievance. (*Id.* at 4.) Burson rejected this grievance because Plaintiff "cannot grieve something that has not happened," and because she had rejected his Informal-Level Grievance. (*Id.* at 4.) Burson issued a Form 3098 listing the same rationale on October 26, 2011. (*Id.* at 3.)

On November 2, 2011, Plaintiff filed a Second-Level Grievance, noting that "[t]he responding staff has misapprehended the authority of AR 740." (*Id.* at 7.) Citing a Form 3098 filed on November 9, 2011, Burson rejected the Second-Level Grievance because Plaintiff's earlier grievances had been rejected. (*Id.* at 6.)

**B.     Count II: Grievance 2006-29-34575 ("Exhibit 516")[2]**

On November 15, 2011, Plaintiff filed Informal-Level Grievance 2006-29-34575, writing that Kyker refused to process an emergency grievance arising from the September Incident. (Defs.' Exh. 516 at 1-2.) Plaintiff also filed an unsigned ACF. (*Id.* at 5.) Hill rejected the grievance on December 8, 2011. (*Id.* at 1.) In a Form 3098 filed the next day, Burson specified that Plaintiff had not signed the ACF, and that "failure to submit a proper informal grievance constitutes abandonment of the grievance at this and all subsequent levels." (*Id.* at 6.)

On December 14, 2011, Plaintiff filed a First-Level Grievance objecting to the rejection of his Informal-Level Grievance. (*Id.* at 7.) Plaintiff also filed an amended ACF on which he wrote, signed, and dated the following objection to the form: "I, Andrew Meeks do not agree that this is my entire claim since adjoining claims my [sic] exist. My signature is given only to attest that the claims herein are true under penalty of perjury." (*Id.* at 5.) This grievance was rejected — and a Form 3098 was filed — on January 4, 2012, because Plaintiff did not sign the ACF. (*Id.* at 8-9.)

Plaintiff filed a Second-Level Grievance on January 5, 2012, which Burson rejected because Plaintiff's Informal- and First-Level Grievances were rejected. (*Id.* at 9.)

**C.     Count III: Grievance 2006-29-34573 ("Exhibit 519")**

On November 15, 2011, Plaintiff filed Informal-Level Grievance 2006-29-34573, alleging that Christianson conspired to harm him by giving other inmates information about his conviction, inciting violence against him, scolding other inmates for not

---

[2]Defendants contend that Plaintiff's failure to exhaust Exhibit 517 affects his Count II claim. Because the Court made factual findings regarding this grievance above, only Exhibit 516 is described here. *See supra* Part II.A.2.b.

harming him, and encouraging them to do so. (Defs.' Exh. 519 at 4-5.) Plaintiff filed an unsigned ACF with his Informal-Level Grievance, writing "I Andrew Meeks do not agree with the words and terms of this document and I will not sign it." (*Id.* at 8.)

On December 8, 2011, Hill rejected the grievance. (*Id.* at 3.) A Form 3098 filed the next day specified that the grievance was rejected because Plaintiff did not sign the ACF and that filing an improper informal grievance constitutes abandonment. (*Id.* at 2.)

On December 18, 2011, Plaintiff filed a First-Level Grievance objecting to this rejection. Hill rejected the First-Level Grievance on January 4, 2011, and Burson issued a Form 3098 the same day. (*Id.* at 9-10.) The Form 3098 cited AR 740 and the ACF, concluding that a grievance filed with an unsigned ACF "will not be accepted." (*Id.* at 9.)

Plaintiff filed a Second-Level Grievance on January 5, 2012, stating that he had complied with AR 740 and Nevada law by completing and signing the ACF. (*Id.* at 11.) Burson rejected this grievance January 11, 2012, stating that Plaintiff's lower-level grievances had been rejected. (*Id.*)

### D.   Count IV: Grievance 2006-29-30081 ("Exhibit 502")

Plaintiff filed Informal-Level Grievance 2006-29-30081 on September 10, 2011. (Defs.' Exh. 502 at 1.) Plaintiff wrote that Bloomfield and other officers engaged in a "campaign of harassment" to retaliate against him. (*Id.* at 1-3.) Plaintiff also filed an unsigned ACF. (*Id.* at 4-6.)

Burson rejected the grievance on September 13, 2011, citing a Form 3098 that states that Plaintiff filed more than one issue in his Informal-Level Grievance, and that he failed to submit "all three copies" of it. (*Id.* at 11.)

Plaintiff resubmitted an Informal-Level Grievance on or about October 14, 2011, specifying that the sole issue alleged was the campaign of harassment. (*Id.* at 12.) The resubmission was denied on the merits on or about December 28, 2011. (*Id.* at 13.)

On or about February 7, 2012, Plaintiff filed a First-Level Grievance objecting to this denial. (*Id.* at 14.) Burson rejected the grievance on February 7, 2012, because ///

1    Plaintiff used tabs and improper continuation forms. (*Id.*) Burson issued a Form 3098 on
2    February 11, 2012, noting the same defect. (*Id.* at 15-16.)

3        Plaintiff filed a Second-Level Grievance on February 14, 2012, stating that no
4    regulation proscribed the use of tabs or required that attachments appear on
5    continuation forms. (*Id.* at 18.) Burson rejected the grievance and filed a corresponding
6    Form 3098 on or about February 21, 2012, noting that Plaintiff's First-Level Grievance
7    was rejected and that it lacked a signature, date, and time of submission. (*Id.* at 18, 20.)
8    Burson directed Plaintiff to refile his grievance at the First Level. (*Id.*)

9        **E.    Count V: Grievance 2006-29-31455 ("Exhibit 507")**

10       Defendants concede that SDCC's administrative remedies were not available to
11   Plaintiff because the grievances in Exhibit 507 were improperly screened for procedural
12   defects. (Dkt. no. 118 at 14-15.)

13   **III.    CONCLUSIONS OF LAW**

14       The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be
15   brought with respect to prison conditions under section 1983 . . . or any other Federal
16   law, by a prisoner confined in any jail, prison, or other correctional facility until such
17   administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The
18   Supreme Court has interpreted § 1997e(a) as "requir[ing] proper exhaustion," *Woodford*
19   *v. Ngo*, 548 U.S. 81, 93 (2006), which "demands compliance with an agency's deadlines
20   and other critical procedural rules." *Id.* at 90. Proper exhaustion requires "a grievant [to]
21   use all steps the prison holds out, enabling the prison to reach the merits of the issue."
22   *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).

23       The Ninth Circuit recognizes an exception to the general rule announced in
24   *Woodford*. Proper exhaustion is not required under the PLRA if administrative remedies
25   are "effectively unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). A
26   remedy is "available" to inmates when it is "capable of use [or] at hand." *Albino v. Baca*,
27   747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (*quoting Brown v. Valoff*, 422 F.3d 926,
28   ///

1   937 (9th Cir. 2006)). The grievance process may be effectively unavailable when prison

2   officials improperly screen inmate grievances. *Sapp*, 623 F.3d at 823-24.

3       "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must

4   plead and prove.'" *Albino*, 747 F.3d at 1166 (*quoting Jones v. Bock*, 549 U.S. 199, 204,

5   216 (2007)). Defendants may meet their burden by "prov[ing] that there was an available

6   administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.*

7   at 1172. Once met, the burden shifts to the inmate to show that "there is something in his

8   particular case that made the existing and generally available administrative remedies

9   effectively unavailable to him." *Id.* Defendants, however, retain "the ultimate burden of

10  proof." *Id.*

11      Defendants argue that Plaintiff failed to exhaust his administrative remedies for

12  two reasons. First, Defendants contend that Plaintiff did not provide enough facts in

13  Exhibits 504, 517 and 519 to exhaust his retaliation claims against Coburn and

14  Bloomfield in Count I, his due process claim against Coburn in Count II, and his

15  conspiracy claim against Coburn and Christianson in Count III. (Dkt. no. 118 at 7, 10-13.)

16  Second, because of procedural deficiencies in Exhibits 502, 516, 517 and 519,

17  Defendants argue that Plaintiff failed to exhaust his due process claims against Coburn

18  and Kyker in Count II, his conspiracy claim against Coburn and Christianson in Count III,

19  and his retaliation claim against Bloomfield in Count IV. (*Id.* at 6-11.) Having considered

20  the testimony and evidence presented, the Court finds that Plaintiff alleges sufficient

21  facts in Exhibits 504, 517 and 519 to exhaust his remedies, and that SDCC's

22  administrative remedies were effectively unavailable with regard to Exhibits 502, 516,

23  517 and 519.

24      **A.   Factual Sufficiency of Exhibits 504, 517 and 519**

25      A prison's grievance procedure dictates the level of detail a grievance must

26  include for proper exhaustion. *Jones v. Bock*, 549 U.S. at 218. NDOC requires inmates

27  to submit, at the Informal Level, "[a]ll documentation and factual allegations available to

28  the inmate," along with the remedy sought. AR 740.05(5)(A); (Defs.' Exh. 520 at 5.) The

1    applicable regulations say nothing about the level of detail an inmate's factual

2    allegations must contain. Where, as here, "a prison's grievance procedures are silent or

3    incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the

4    nature of the wrong for which redress is sought.'" *Griffin*, 557 F.3d at 1120 (*quoting*

5    *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate need not "identify

6    responsible parties or . . . signal who ultimately may be sued," *Sapp*, 623 F.3d at 824; list

7    "every fact necessary to prove each element of an eventual legal claim;" or "include legal

8    terminology or legal theories unless they are in some way needed to provide notice of

9    the harm being grieved." *Griffin*, 557 F.3d at 1120.

10    Defendants argue that Plaintiff failed to meet this factual threshold for his Count I

11    retaliation claim in Exhibit 504, his Count II due process claim in Exhibit 517, and his

12    Count III conspiracy claim in Exhibits 504 and 519. The Court finds that Defendants have

13    failed to meet their burden to show that Plaintiff did not properly exhaust Exhibits 504,

14    517 and 519 because of factual inadequacy.

15                              **1.    Count I: Exhibit 504**

16    Defendants argue that Plaintiff failed to offer facts in Exhibit 504 sufficient to

17    sustain his Count I retaliation claim against Coburn and Bloomfield. (Dkt. no. 118 at 11-

18    13.) The retaliation claim alleges that during the September Incident, Bloomfield

19    encouraged Coburn to break Plaintiff's arms by pulling them while he was handcuffed.

20    (Dkt. no. 4 at 8.) Plaintiff also alleges that Bloomfield called him "a cry baby who puts

21    paperwork on officers." (*Id.*) Defendants contend that under *Griffin*, Plaintiff's grievances

22    would need to identify the force with which the officers pulled on Plaintiff's arms and the

23    time at which an officer made the "cry baby" statement. (Dkt. no. 118 at 12-13, 12 n.12.)

24    Because these details do not appear in Exhibit 504, Defendants contend that Plaintiff

25    failed to exhaust this claim. The Court disagrees.

26    ///

27    ///

28    ///

1   The Ninth Circuit in *Griffin* concluded that an inmate's grievance failed to "alert[]

2   the prison to the nature of the wrong for which redress is sought."[3] 557 F.3d at 1120

3   (internal quotation marks omitted). The inmate struggled with the top bunks of the

4   prison's beds, and had received a medical order for a lower bunk. *Id.* at 1118-19. But the

5   inmate failed to note in his grievances that prison staff allegedly disregarded the order.

6   *Id.* at 1121. Without notice of this disregard, the court reasoned that the prison could not

7   respond to the inmate's needs; his grievances were therefore factually inadequate to

8   support a claim of deliberate indifference. *Id.* at 1120-21.

9   Here, in contrast, Plaintiff specifies the actions underlying his retaliation claim in

10   Exhibit 504. Plaintiff notes that officers "pulled up my arms while they were cuffed, and

11   stepped on my back trying to hurt my wrist against the tension of the cuffs." (Defs.' Exh.

12   504 at 3.) Plaintiff later specifies that "[o]ne of the C/Os said 'This is the cry baby who

13   likes putting paperwork on officers.'" (*Id.* at 4.) Plaintiff goes on to name three of the five

14   officers involved in the attack as Christianson, Singer, and Bloomfield. Whereas the

15   omission in *Griffin* undermined the prison's ability to respond to the grievances, the

16   omissions Defendants stress here — how forcefully the officers pulled on Plaintiff's arms

17   and at exactly what time these events occurred — would not foreclose the prison from

18   "'tak[ing] appropriate responsive measures'" to Plaintiff's retaliation claim. *Griffin*, 557

19   F.3d at 1121 (*quoting Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)). Although

20   SDCC may need to investigate Plaintiff's allegations further, this grievance notified them

21   that Plaintiff's arms and wrists were harmed, at least in part, because he used the

22   grievance process. Because Plaintiff included enough facts to notify prison staff of the

23   retaliatory nature of his allegation, the Court finds that Defendants have not met their

24   ///

25

26   _____

27   [3]The regulation in *Griffin* instructed inmates to "[b]riefly describe [the] complaint and a proposed resolution." *Griffin*, 557 F.3d at 1120 (alteration in original) (internal quotation marks omitted). The court found this regulation ambiguous with regard to the

28   factual specificity required of inmates' grievances. *Id.*

1   initial burden to show that Plaintiff failed to exhaust Exhibit 504 because of factual

2   inadequacy.

3                    **2.      Count II: Exhibit 517**

4             Defendants additionally contend that in Exhibit 517,[4] Plaintiff alleges a

5   constitutional violation arising from the grievance process itself. (Dkt. no. 118 at 7.)

6   Because Plaintiff lacks a "claim of entitlement to a grievance procedure," Defendants

7   assert that Exhibit 517 is improper. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

8   Plaintiff alleges First and Fourteenth Amendment violations in Count II. (Dkt. no. 4 at 10.)

9   Although Plaintiff does not have a separate constitutional right to a particular grievance

10  process, "a prisoner is not wholly stripped of constitutional protections when he is

11  imprisoned for a crime." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). "It is well-

12  established that, among the rights they retain, prisoners have a First Amendment right to

13  file prison grievances," and retaliation for exercising that right "is itself a constitutional

14  violation." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Moreover, disciplinary

15  measures that "impose[] [an] atypical and significant hardship on the inmate in relation to

16  the ordinary incidents of prison life" may violate a prisoner's due process rights. *Sandin*

17  *v. Conner*, 515 U.S. 472, 484 (1995).

18            Although Plaintiff did not mention due process or retaliation in Exhibit 517, the

19  grievance is factually sufficient. Plaintiff described Coburn's alleged refusal to process an

20  emergency grievance on September 25, 2011, the date of the alleged attack. (*See* Defs.'

21  Exh. 517 at 1-2.) In an ACF filed with Plaintiff's informal grievance, Plaintiff described

22  Coburn as "one of 5 white C/Os who brutalized me," and specified that he suspected

23  Coburn refused to process his emergency grievance to cover up the September Incident.

24

25  _____

26          [4]Defendants' Grievance Chart lists Exhibit 517 as a contested grievance in Count
    I because it discusses Coburn's responses to Plaintiff's grievances following the
    September Incident. (*See* dkt. no. 111 at 2-3). Because Defendants addressed Exhibit
27  517's alleged substantive problems only in the context of Count II, the Court focuses
    there. (*See* dkt. no. 118 at 7-8.) The Court's conclusion that Exhibit 517 is substantively
28  proper extends to the contested claims in both Counts I and II.

(*Id.* at 4.) Plaintiff described these actions as "violat[ing] [his] civil rights." (*Id.* at 2.) Thus, although Plaintiff discusses his ability to use the grievance process, Exhibit 517 would notify the prison of the constitutional violations for which Plaintiff sought redress, including his due process and First Amendment rights. *See Griffin*, 557 F.3d at 1120. Defendants have not met their burden to show that Plaintiff did not exhaust his Count II First and Fourteenth Amendment claims due to lack of specificity.

### 3.    Count III: Exhibits 504 and 519

Finally, Defendants contend that Plaintiff failed to exhaust his Count III conspiracy claim against Christianson and Coburn because Exhibits 504 and 519 are factually inadequate. This argument falls short. In Count III, Plaintiff alleges that Christianson and Coburn conspired to deprive Plaintiff of his Eighth Amendment rights, in part because of his criminal convictions. In Exhibit 504, Plaintiff identifies Christianson as one of the officers involved in September Incident. (Defs.' Exh. 504 at 1-2.) After describing the attack, Plaintiff further notes that one of his attackers stated that he was going to "let everyone know that [Plaintiff] was a child molester." (*Id.* at 4.) Plaintiff further notes that Christianson told other inmates about his convictions and falsely accused Plaintiff for having drugs and a weapon in his cell. (*Id.* at 4-5.) Although Plaintiff does not name Coburn in Exhibit 504, he notes that two unnamed officers were involved in the incident.[5] (*Id.* at 1-2.) Because Plaintiff need not name every responsible party in his grievances, *Sapp*, 623 F.3d at 824, these facts are sufficient to notify SDCC of the conspiratorial nature of Plaintiff's allegations. *See Griffin*, 557 F.3d at 1120.

Filed several weeks after the September Incident, Exhibit 519 states that Christianson made public Plaintiff's convictions and encouraged inmates to harm him. (Defs.' Exh. 519 at 4-5.) Specifically, Plaintiff notes that Christianson gave inmates documents describing his criminal convictions, scolded inmates for not harming Plaintiff,

---

[5]As noted above, Plaintiff identifies Coburn as one of his attackers in Exhibit 517. (Defs.' Exh. 517 at 4.)

and encouraged them to harm him. (*Id.*) Plaintiff does not name Coburn in this grievance. Nevertheless, like in Exhibit 504, the facts alleged in Exhibit 519 are sufficient to put SDCC on notice of Christianson's alleged conspiracy. *See Griffin*, 557 F.3d at 1120. The Court finds that Defendants have not proved that Exhibits 504 and 519 lacked facts sufficient to exhaust Plaintiff's Count III conspiracy claim against Christianson and Coburn.

### B.   Effectively Unavailable Remedies for Exhibits 502, 516, 517 and 519

If Defendants prove that administrative remedies were available, and that Plaintiff failed to exhaust them properly, then Plaintiff may be excused from his failure to exhaust by showing that those remedies were effectively unavailable. *Albino*, 747 F.3d at 1172. Plaintiff may meet this burden "by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* (*quoting Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). Improperly screened grievances may be effectively unavailable. *Sapp*, 623 F.3d at 823-24.

To analyze whether the grievance process was effectively unavailable for Exhibits 502, 516, 517 and 519, the Court assumes that Defendants meet their initial burden. First, the evidence indicates that the grievance process was available to Plaintiff because it was "at hand." *Albino*, 747 F.3d at 1171. For example, Defendants offer Plaintiff's grievance history, which lists grievances Plaintiff filed through NDOC's system beginning in early 2009. (*See* Defs.' Exh. 501.) The grievance history demonstrates Plaintiff's ability to access, submit, and respond to the requisite grievance forms. (*Id.*) Moreover, Plaintiff's own testimony, which recounts his process of submitting and appealing the grievances at issue here, indicates that he was able to request and file grievances, and access the governing regulations. *See Albino*, 747 F.3d at 1175-76 (holding that prison failed to meet its initial burden because inmates could not access regulations governing the grievance process, boxes for depositing grievances were unlabeled, inmates were not told how to grieve, and forms were available only to prisoners who knew to request them).

Second, the Court assumes that Plaintiff never properly exhausted these grievances because SDCC did not review them on the merits, as *Woodford* mandates. 548 U.S. at 90-91; *Griffin*, 557 F.3d at 1119. Rather than reaching the merits at each level, SDCC screened out these grievances for alleged procedural defects. Had SDCC reached the merits, the Court finds that these grievances contain facts sufficient to exhaust the claims they support. Nevertheless, because SDCC never reached the merits, the Court assumes that Defendants meet their initial burden of showing that Plaintiff never exhausted his available remedies.

The Court finds, however, that Plaintiff meets his burden of showing that the grievance process was effectively unavailable for each of these exhibits. Accordingly, because Defendants fail to carry their ultimate burden, Plaintiff may proceed with claims arising from Exhibits 502, 516, 517 and 519.

### 1.    Exhibit 502

To show that prison officials' improper screening renders a grievance process effectively unavailable, an inmate must establish:

> (1) that he actually filed a grievance . . . that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance . . . for reasons inconsistent with or unsupported by applicable regulations.

*Sapp*, 623 F.3d at 823-24. The Court finds that improper screening rendered the grievance process effectively unavailable for the grievances in Exhibit 502.

First, Exhibit 502 would suffice to exhaust Plaintiff's Count IV retaliation claim against Bloomfield. The grievance describes cell searches and disciplinary actions that Plaintiff believed Bloomfield and others carried out because he used the grievance process. If allowed to proceed to the merits, this grievance would notify prison staff of the retaliatory nature of Plaintiff's allegations. Exhibit 502 satisfies *Sapp*'s first prong.

Second, Defendants contend that SDCC properly screened the First- and Second-Level Grievances in Exhibit 502 for procedural deficiencies. (Dkt. no. 118 at 5-6.) For Plaintiff's First-Level Grievance, which was rejected because he submitted

16

tabbed documents and used allegedly improper continuation forms, Defendants stress a provision of SDCC's OP 740 that requires prison staff to provide grievance forms. (*Id.* at 5; *see* Defs.' Exh. 521 at 2.) This provision says nothing to forbid tabs in attached documents. Rather, the provision requires inmates to "attach any supporting documentation" to their First-Level appeals. (Defs.' Exh. 521 at 2.) As Defendants' witness testified, supporting documents need not appear on NDOC's continuation form, Form DOC-3097.[6] (Dreesen Test.); *see* AR 740.05(5) (requiring inmates to use Form DOC-3097 "if unable to present the details of their claim in the space available" on other grievance forms); (Defs.' Exh. 520 at 5.) These regulations do not support SDCC's screening. *See Sapp*, 623 F.3d at 823-24. The Court finds that this unsupported screening rendered the grievance process effectively unavailable to Plaintiff.

Plaintiff's Second-Level Grievance was also improperly screened. SDCC rejected the grievance because it was allegedly missing a date, time, and signature; SDCC instructed Plaintiff to re-file his First-Level Grievance with these deficiencies corrected. (Defs.' Exh. 502 at 18-21.) Presumably, this response refers to the unsigned ACF Plaintiff filed with his Informal-Level Grievance and to Plaintiff's First-Level Grievance, which, as reproduced in the record, is missing a date. (*See id.* at 5, 14.) Nevertheless, none of these deficiencies appeared in SDCC's response to the First-Level Grievance, which contravenes AR 740.05(3)'s requirement that responses must "referenc[e] all policies, procedures, rationale[s], and/or circumstances in finding for or against the inmate."[7] (Defs.' Exh. 520 at 5.) Accordingly, the Court finds that improper screening

---

[6] Indeed, Defendants did not provide the Court with Plaintiff's full First-Level Grievance; the Court has reviewed only the first page of the grievance, the Form 3098 responding to the grievance, and a summary page printed from SDCC's computer system. (Defs.' Exh. 502 at 14-17.) Based on the testimony presented, the Court assumes that any tabs appeared on documents attached as exhibits to the First-Level Grievance.

[7] The Court notes that this provision appears in the regulation governing Informal-Level Grievances. *See* AR 740.05; (Defs.' Exh. 520 at 4). Because analogous regulations for First- and Second-Level Grievances do not specify what content must appear in responses, the Court reads AR 740.05(3) as applying to the First-Level response at issue here.

rendered this administrative remedy effectively unavailable to Plaintiff, excusing him from the PLRA's exhaustion requirement. *See Sapp*, 623 F.3d at 823. Plaintiff may proceed with his Count IV retaliation claim against Bloomfield.

### 2.   Exhibits 516, 517 and 519

In Exhibits 516, 517 and 519, SDCC rejected Plaintiff's grievances because he did not sign the ACF's signature block. Defendants contend that these rejections were proper because AR 740.05(7) requires inmates to submit a "completed" ACF for civil rights grievances. (Defs.' Exh. 520 at 5.) Defendants' witness testified that a properly "completed" form requires an inmate signature, but he could not identify any regulation so defining a "completed" form. (Dreesen Test.) The Court finds that Plaintiff has satisfied his burden of showing that by rejecting his grievances for failing to sign the ACF, SDCC rendered his administrative remedies effectively unavailable.

First, these exhibits would suffice to exhaust Plaintiff's claims if they had not been improperly screened. *Sapp*, 623 f.3d at 823-24. Exhibits 516 and 517, which support Plaintiff's Count II claims, describe how Kyker and Coburn refused to process emergency grievances arising from the September Incident. As discussed above, Exhibit 517 would notify SDCC of Plaintiff's retaliation and due process allegations against Coburn. (*See supra* Part III.A.) Exhibit 516 similarly describes Kyker's involvement in covering up the September Incident, and suggests — without explicitly stating — that these actions raise due process and retaliation concerns. (*See* Defs.' Exh. 516 at 1-2, 4.) Exhibit 519 likewise describes actions Christianson carried out to encourage others to harm Plaintiff, including making his criminal record publicly known and telling inmates to harm him. (Defs.' Exh. 4-5.) As discussed earlier, this grievance would notify SDCC of the nature of Plaintiff's Count III Eighth Amendment claims. (*See supra* Part III.A.) These grievances therefore meet *Sapp*'s first prong.

With regard to the second prong, the *Sapp* court recognized "the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative

1   remedies are effectively unavailable." *Sapp*, 623 F.3d at 826. There, the court reasoned
2   that a prison appropriately screened out an inmate's grievances for procedural problems
3   five times. *Id.* at 826-27. The procedural deficiencies included raising a new issue in a
4   second-level grievance, failing to note a specific remedy, failing to attach a requisite
5   health care form, and untimely appealing a lower-level grievance. *Id.* at 825-26. The
6   inmate also received instructions to raise new issues in a separate grievance, to state
7   specific remedies, and to provide the prison with the appropriate medical form. *Id.*
8   Because each screening was supported by grievance regulations, and because the
9   inmate had received appropriate instructions to fix these procedural problems, the court
10  concluded that the inmate was required to exhaust his remedies. *Id.* at 827.

11          Here, conversely, Plaintiff has established that he had a reasonable good faith
12  belief that SDCC's administrative remedies were effectively unavailable. In Exhibits 516,
13  517 and 519, Plaintiff understood that by signing the ACF, he would foreclose any claims
14  adjoining those specified in his grievances. He noted this understanding on the ACFs in
15  Exhibits 516 and 517, and noted his disagreement with the form in Exhibit 519. (Defs.'
16  Exh. 516 at 5; Defs.' Exh. 517 at 5; Defs.' Exh. 519 at 8.) Despite these clarifications,
17  SDCC rejected each grievance as procedurally improper at all three levels because
18  Plaintiff did not sign the ACF's signature blocks.[8] Upon receiving these rejections,
19  Plaintiff appealed his grievance to the next available level because, as his testimony and
20  cross-examination suggest, he understood AR 740.03(5) as requiring such an appeal.

21          AR 740.03(5) states that "[i]n the event an inmate's claim is deemed inappropriate
22  for review or not within the intended scope of this Regulation, the inmate may appeal
23  that decision only to the next procedural level of review." (Defs.' Exh. 520 at 3.) Coupled
24  with AR 740.03(6), which permits inmates to appeal when dissatisfied with a response,

25

26          _____
27          [8]However, SDCC also signaled a conflicting position on Plaintiff's refusal to sign
    the ACF when, in Exhibit 502, Plaintiff's Informal-Level Grievance was not rejected for
    his failure to sign. Burson only noted the unsigned ACF, among other deficiencies, as a
28  basis for rejection at the Second-Level Grievance. (Defs.' Exh. 502 at 18, 20.)

the only recourse available to Plaintiff upon receiving a rejection for an unsigned ACF appeared to be a next-level appeal.[9] (*Id.*) Moreover, unlike in *Sapp*, SDCC's instructions for correcting this deficiency never clarified whether Plaintiff would give up his adjoining claims by signing the ACF. *See Sapp*, 623 F.3d at 825-26; (*see, e.g.*, Defs.' Exh. 516 at 8). Rather, the instructions admonish Plaintiff for not signing the form, stating that Plaintiff abandons his claim at every level by refusing to sign. Further, the instructions cite to provisions of AR 740 and the ACF itself, neither of which respond to Plaintiff's concern about adjoining claims. Finally, although Form 3098 states that an inmate "may resubmit [his] grievance after correcting the above deficiencies," this language offers no clarification of the seemingly conflicting provision in AR 740.03(5), which instructs inmates to appeal a claim deemed inappropriate for review to the next level. (Defs.' Exh. 520 at 3.) Indeed, Plaintiff attempted to comply by appealing Exhibits 516, 517 and 519 to the next available level, only to receive more procedural rejections because of his ACFs. (*See* Defs.' Exh. 516 at 9, Defs.' Exh. 517 at 9, Defs.' Exh. 519 at 11.)

Based on these repeated rejections, opaque instructions, and conflicting regulations, the Court finds that Plaintiff had a reasonable good faith belief that the grievance process was effectively unavailable. Plaintiff therefore falls within the exception to the PLRA's exhaustion requirement, and may proceed with his Count II and III claims arising from Exhibits 516, 517 and 519.

///

///

---

[9]Defendants argue that Plaintiff knew that resubmission at the Informal Level was the appropriate remedy for procedural deficiencies because Plaintiff resubmitted Exhibit 502 at that level. (Dkt. no. 118 at 5.) Defendants ignore Plaintiff's testimony regarding AR 740.03(6), which states that "[a]n inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level, within the substantive and procedural requirements outlined herein." (Defs.' Exh. 520 at 3.) Plaintiff understood dissatisfaction with a procedural rejection as necessitating appeal. For Exhibit 502, Defendants point to no evidence suggesting that Plaintiff was dissatisfied with a procedural rejection, unlike his repeated objections to signing the ACF in Exhibits 516, 517 and 519. (Defs.' Exh. 502 at 12.) This argument is therefore unavailing.

### C.     Plaintiff Exhausted Exhibits 503, 506 and 507

Defendants concede that Plaintiff exhausted his administrative remedies for claims raised in Count V through Exhibits 503, 506 and 507. (Dkt. no. 118 at 14-15.) Accordingly, Plaintiff may proceed with the colorable claims he raises in Count V.

In the context of Count I, Defendants have suggested that the same procedural deficiencies they initially highlighted in Count V undermine Plaintiff's exhustion of the retaliation claims in Exhibits 503 and 506. (Dkt. no. 111 at 3-4.) By conceding that the grievance process "may not have been available to the Plaintiff given that he could not fix the deficiencies" for Exhibits 503 and 506, Defendants highlight why the procedural deficiencies allegedly infecting Count I lack merit. (Dkt. no. 118 at 15.) Thus, although Defendants did not specifically concede their arguments regarding Exhibits 503 and 506 as applied to Count I, the Court finds that Plaintiff exhausted his Count I retaliation claim in part through Exhibits 503 and 506.

### D.     Plaintiff's Objections and Defendants' Motion to Strike

Plaintiff's objections point out questions of fact and law that are properly before the Court. The Court overrules each objection. Accordingly, Defendants' Motion to Strike (dkt. no. 122) is denied.

## IV.     CONCLUSION

The Court finds that Plaintiff alleges sufficient facts to exhaust the contested claims arising from grievances in Exhibits 504, 517 and 519. The Court further finds that Plaintiff did not need to exhaust the contested claims arising from Exhibits 502, 516, 517, 519, 503, 506 and 507. The contested claims are: (1) Count I: Retaliation involving Coburn and Bloomfield; (2) Count II: Due Process Violations involving Coburn and Kyker; (3) Count III: Conspiracy to Use Excessive Force involving Christianson and Coburn; (4) Count IV: Retaliation involving Bloomfield; (5) Count V: Supervisor Liability.

///

///

///

1    It is therefore ordered that Plaintiff may proceed to trial on these claims and any

2  remaining colorable claims identified in the Screening Order (dkt. no. 3).

3    It is further ordered that Defendants' Motion to Strike (dkt. no. 122) is denied.

4
    DATED THIS 17th day of September 2014.

5

6

7  _____
   MIRANDA M. DU
8  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28